**UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA



FILED
FEB - 7 2020
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHATEZ DAMAURI-QUADRE FRANKLIN,<br><br>Defendant. | Criminal No. 1:20-mj-53 |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Bernard Mensah, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since May of 2017. I am currently assigned to the ATF Washington Field Division's Group II. My assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, and firearms trafficking. I previously served as a United States Secret Service Police Officer from 2007 to 2008 and as a Federal Air Marshal with the United States Federal Air Marshal Service from 2008 to 2017.

2. In 2006, I received a Bachelor's degree in Criminal Justice and Social Science from Ramapo College of New Jersey, in Mahwah, New Jersey. I am also a graduate of the Uniform Police Training Program, the Criminal Investigator Training Program, and the ATF Special Agent Basic Training program, which are all conducted by the Federal Law Enforcement Training Center at Glynco, Georgia.

3. I submit this affidavit in support of a criminal complaint charging that, on or about January 18, 2019, in the Eastern District of Virginia, the defendant, SHATEZ DAMAURI-

1

QUADRE FRANKLIN ("FRANKLIN"), knowingly made a false statement and representation to Dance's Sporting Goods, a licensed dealer under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Dance's Sporting Goods, in that the defendant represented on the Federal Firearms Transaction Record, Form 4473, that the defendant was the actual buyer of the firearm, when in fact he was not the actual buyer, in violation of Title 18, United States Code, Section 924(a)(1)(A).

4. The facts in this affidavit are based on my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. All observations referenced in this affidavit that I did not personally make were relayed to me by the person(s) who made such observations or in reports that detailed the events described by those person(s). This affidavit contains information necessary to establish probable cause, and it does not include all of the information known to me or the government.

## PROBABLE CAUSE

A. Firearm Recovery and Identification of FRANKLIN

5. On April 13, 2019, officers of the Washington D.C. Metropolitan Police Department recovered a Glock, model 23, .40 caliber pistol, bearing serial number MBV647 (hereinafter, the "Glock 23") in the possession of a convicted felon during an arrest in Washington, D.C. Law enforcement subsequently conducted a check of the Glock 23 through E-Trace, a gun tracing database. On April 25, 2019, I reviewed a Firearm Trace Summary indicating that FRANKLIN purchased the Glock 23 on or about January 18, 2019 from Dance's Sporting Goods located in Colonial Heights, Virginia, within the Eastern District of Virginia.

B. <u>FRANKLIN's Firearms Purchases</u>

6. Subsequently, I conducted a law enforcement database check and confirmed that FRANKLIN had three background checks conducted at Dance's Sporting Goods, which is a federal firearms licensee ("FFL"). Based on my training and experience, I know that individuals are required to submit to a background check prior to the purchase of a firearm from an FFL. In this case, FRANKLIN had background checks conducted on or about January 18, 2019, February 1, 2019, and February 2, 2019.

7. The ATF maintains records of a "multiple sale." A multiple sale is when an FFL sells an individual more than one semi-automatic pistol capable of accepting a detachable magazine during any five (5) consecutive business days. Based on ATF multiple sale records, I determined that:

   a. On or about January 18, 2019, FRANKLIN purchased two firearms at Dance's Sporting Goods, specifically (i) the Glock 23 identified in Paragraph 5, and (ii) a Karlovac (Springfield), XDS, .40 caliber pistol, bearing serial number S3531781 (hereinafter, the "Springfield XDS").

   b. On or about February 1, 2019, FRANKLIN purchased two firearms at Dance's Sporting Goods, specifically, (i) a Glock, model 27, .40 caliber pistol, bearing serial number BHEW386 (hereinafter, the "Glock 27"), and (ii) a Glock, model 30, .45 caliber pistol, bearing serial number XAA528 (hereinafter, the "Glock 30").

   c. On or about February 2, 2019, FRANKLIN purchased one firearm at Dance's Sporting Goods, specifically a Taurus, model G2C, 9mm pistol, bearing serial number TLW05138 (hereinafter, the "Taurus G2C").

8. On April 24, 2019, Dance's Sporting Goods provided copies of records related to FRANKLIN's purchase of five firearms between on or about January 18, 2019 and on or about February 2, 2019. For each firearm, Dance's Sporting Goods provided a receipt, a "Report of Multiple Sale or Other Disposition of Pistols and Revolvers," and a copy of an ATF Form 4473, which is the form that a buyer is required to complete at the time of purchase. Dance's Sporting Goods also provided a copy of FRANKLIN's Virginia driver's license, which FRANKLIN presented at the time of purchase. According to the receipts:

    a. FRANKLIN purchased the Glock 23 for $449.99 on January 18, 2019;

    b. FRANKLIN purchased the Springfield XDS for $299.99 on January 18, 2019;

    c. FRANKLIN purchased the Glock 27 for $569.99 on February 1, 2019;

    d. FRANKLIN purchased the Glock 30 for $489.99 on February 1, 2019; and

    e. FRANKLIN purchased the Taurus G2C for $229.99 on February 2, 2019.

C. <u>Interview of FRANKLIN</u>

9. On November 19, 2019, FRANKLIN consented to an interview, which took place at a store in Washington Park in Emporia, Virginia. After being unable to reach FRANKLIN in person or by telephone call, I contacted FRANKLIN via text message and asked him to call me back. FRANKLIN returned my call and agreed to meet to be interviewed. ATF Special Agent Rebecca Tomlinson and I interviewed FRANKLIN. Prior to the interview, we identified ourselves as ATF agents and told FRANKLIN that he was not under arrest at that time and that we wanted to give him an opportunity to tell his side of the story. FRANKLIN agreed to speak to us.

10. During the interview, I showed FRANKLIN an image of the driver's license FRANKLIN presented at Dance's Sporting Goods. FRANKLIN acknowledged that it was his license, but told agents that the address listed on the license was his mother's residence and he no

longer lived there. FRANKLIN said he has not lived there since 2015, but he stated that his mail still gets sent there. When asked where he currently lives, FRANKLIN said he lives "out and about."

11. When we asked FRANKLIN what he did with the firearms after he purchased them, FRANKLIN initially made a series of false statements regarding the firearms. Specifically, FRANKLIN claimed that FRANKLIN kept the weapons, then he gave two away, and that certain of his firearms were stolen. When FRANKLIN was challenged about the veracity of these statements, FRANKLIN admitted that these statements were untrue.

12. FRANKLIN admitted that he actually purchased the firearms for another individual (known to law enforcement but identified herein by his initials "C.T."). FRANKLIN stated that C.T. asked him to purchase firearms for C.T., and that C.T. provided FRANKLIN with the money to make the purchases. When asked if C.T. directed FRANKLIN to buy the guns, FRANKLIN responded, "Yeah, yeah, yeah." FRANKLIN said he purchased all five firearms identified above for C.T., with the exception of the Glock 30, which FRANKLIN claimed was his own. FRANKLIN said he believed that C.T. asked him to purchase the firearms—rather than C.T. purchasing them himself—because FRANKLIN's criminal record was clean.

13. When asked if C.T. had any affiliation to Washington, D.C., FRANKLIN said, "He was staying out there. He was staying in D.C." FRANKLIN continued, "I know he was deep in the streets, and I know, like I said, some of the guns we bought, he sold to people in D.C." Earlier in the interview, FRANKLIN stated, regarding C.T., "I bought the guns. He sold the guns." FRANKLIN said he did not know to whom specifically C.T. sold the firearms.

14. At another point in the interview, when asked if he knew C.T. was going to sell the firearms, FRANKLIN stated, "I knew he was going to sell them but I told him, I told him, when

you sell them guns, bruh, you need to go ahead and let me know so I can report them stolen. That's what I told him."

15. FRANKLIN said he did not know how much money C.T. made by selling firearms, but FRANKLIN claimed that he did not personally make any money by purchasing the firearms for C.T.

16. FRANKLIN stated that he did not know C.T.'s criminal background when he purchased the firearms for C.T., but admitted that he knew C.T. sold marijuana.

D. <u>ATF Form 4473s</u>

17. As stated, to complete the five firearms purchases discussed above, FRANKLIN was required to complete ATF Form 4473s, also known as a "Firearms Transaction Records," at Dance's Sporting Goods. In total, FRANKLIN completed three separate ATF Form 4473s, on or about January 18, 2019, February 1, 2019, and February 2, 2019.

18. On each ATF Form 4473, Question 11(a) states, in part: "Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**" FRANKLIN checked "Yes" in response to this question on each form. In this case, as he admitted in the interview, FRANKLIN purchased the firearms for C.T. and C.T. paid for the firearms. Thus, FRANKLIN was not the actual buyer and his affirmative response was a false statement.

19. On each ATF Form 4473, the buyer must sign his or her name directly below the following certification: "I certify that my answers in Section A are true, correct, and complete. . . . I understand that answering 'yes' to question 11.a. if I am not the actual

6

transferee/buyer is a crime punishable as a felony under Federal law . . . ." FRANKLIN signed his name directly below this statement.

20. At the November 19, 2019 interview, FRANKLIN was asked to review the ATF Form 4473s connected with his January and February 2019 firearms purchases. FRANKLIN confirmed that he had completed the forms when purchasing the firearms.

21. Through my training and experience, I am aware that federal law prohibits FFLs from selling a firearm to a non-licensee purchaser "unless the [FFL] records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a). I am further aware that the law requires FFLs to retain "as a part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms." *Id.* Accordingly, any false statement a purchaser makes on an ATF Form 4473 pertains to information an FFL is required by law to maintain.

22. I have confirmed, through ATF databases, that Dance's Sporting Goods is a registered FFL.

23. Based on my training and experience, I know that the firearms discussed in this affidavit, and particularly in Paragraph 7, constitute firearms, pursuant to Title 18, United States Code, Section 921(a)(3), and were not manufactured in the Commonwealth of Virginia. Therefore, the firearms traveled in, and/or affected interstate commerce.

## CONCLUSION

24. Based on the information contained in this affidavit, I submit that there is probable cause to believe that, on or about January 18, 2019, in the Eastern District of Virginia, the defendant, FRANKLIN, knowingly made a false statement and representation to Dance's Sporting Goods, a licensed dealer under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to

be kept in the records of Dance's Sporting Goods, in that the defendant represented on the Federal Firearms Transaction Record, Form 4473, that the defendant was the actual buyer of the firearm, when in fact he was not the actual buyer, in violation of Title 18, United States Code, Section 924(a)(1)(A).

_____
Bernard Mensah
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn and subscribed to before me this 7th day of February, 2020.

_____/s/_____
Ivan D. Davis
United States Magistrate Judge